|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>KENNETH RICHARDSON,<br>    *Defendant*. | No. 3:99-cr-264-8 (VAB) |

## RULING AND ORDER ON FIRST STEP ACT MOTION
## FOR IMMEDIATE RELEASE OR RESENTENCING

Kenneth Richardson ("Defendant") has moved for his immediate release or resentencing under Section 404 of the recently-enacted First Step Act. *See* Amended First Step Act Motion for Immediate Release or Resentencing, dated Apr. 16, 2019 ("Def.'s Mot."), ECF No. 2494; *see also* Memorandum in Support of Def.'s Mot., dated May 21, 2019 ("Def.'s Mem."), ECF No. 2504. He is currently serving a life sentence.

The United States of America (the "Government") has opposed Mr. Richardson's motion. Government's Opposition to Def.'s Mot., dated Jun. 18, 2019 ("Gov't Opp."), ECF No. 2523.

On September 6, 2019, the Court held a hearing on the motion. Minute Entry, dated Sept. 6, 2019, ECF No. 2575.

For the reasons explained below, the Court (1) **GRANTS** the motion; (2) **ORDERS** that Mr. Richardson's sentence of incarceration be **REDUCED** to **TIME SERVED**; (3) **IMPOSES** a term of supervised release of **FIVE (5) YEARS**. The Bureau of Prisons is authorized to delay execution of this Order for up to ten (10) days after its issuance so that the Bureau may make necessary arrangements related to Mr. Richardson's release. The Bureau of Prisons is directed to proceed as expeditiously as possible so as to avoid any unnecessary delay.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Richardson has been in federal custody for the last nineteen years because of his role in "an extensive drug trafficking enterprise in Bridgeport, Connecticut," in the P.T. Barnum Housing Project in the late 1990s. *United States v. Jones*, 294 F. App'x 624, 626 (2d Cir. 2008) (summary order). The factual background of that enterprise has been described in multiple opinions rendered in this District and by the Second Circuit. *See, e.g.*, *United States v. Luke Jones*, 482 F.3d 60, 63–66 (2d Cir. 2006) (detailing evidence as to the conspiracy introduced at trial against Luke Jones, in light most favorable to the Government); *Lyle Jones v. United States*, No. 3:12-cv-601 (EBB), 2014 WL 6871198, at *4–5 (D. Conn. Dec. 5, 2014) (detailing evidence as to the enterprise introduced at trial against Lyle Jones).

On November 16, 1999, a federal grand jury returned a sealed, multi-count indictment against Luke Jones, Lonnie Jones, and Lance T. Jones. Sealed Indictment, dated Nov. 16, 1999, ECF No. 1.

On February 3, 2000, a federal grand jury returned a Superseding Indictment against the three originally-named defendants, Mr. Richardson, and ten other alleged members of the drug trafficking enterprise. Superseding Indictment, dated Feb. 3, 2000, ECF No. 36. The superseding indictment charged Mr. Richardson with knowingly and intentionally conspiring to possess with intent to distribute and to distribute heroin, cocaine, and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846, from January 1997 to December 1999 (Count One). *Id.*

On May 23, 2000, Mr. Richardson was arraigned before Magistrate Judge Holly B. Fitzsimmons on the Superseding Indictment and pleaded not guilty to the drug conspiracy charge. *See* Docket Entries, dated May 23, 2000. Judge Fitzsimmons ordered Mr. Richardson to be detained pending trial. *See id.*

On November 7, 2000, a federal grand jury returned a Second Superseding Indictment against Mr. Richardson and the other alleged members of the drug trafficking enterprise. Second Superseding Indictment, dated Nov. 7, 2000, ECF No. 455.

That same day, Mr. Richardson was arraigned before Magistrate Judge Fitzsimmons on the Second Superseding Indictment and pleaded not guilty to the drug conspiracy charge. Minute Entries, dated Nov. 7, 2000.

On December 4, 2000, after a thirteen-day trial before United States District Judge Alan H. Nevas, a jury convicted Mr. Richardson of conspiracy to possess and distribute heroin, cocaine, and cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Verdict Form, dated Dec. 4, 2000, at 4. The jury found, as to quantity, that Mr. Richardson's agreement to possess with intent to distribute narcotics involved 1,000 grams or more of a mixture or substance containing heroin, 5,000 grams or more of a mixture or substance containing cocaine, and 50 grams or more of a mixture or substance containing cocaine base. *See id.* at 4–6.

On March 30, 2001, Judge Nevas sentenced Mr. Richardson to a term of life imprisonment for conspiring to possess heroin, cocaine, and cocaine base as well as distribution of the same. Judgment, dated Mar. 30, 2001, ECF No. 639; *see also* Transcript of Proceedings, dated Mar. 30, 2001 ("Sentencing Tr."), ECF No. 683.

Mr. Richardson subsequently appealed his conspiracy conviction and sentence on a number of grounds—all of which were rejected by the Second Circuit on October 5, 2004. *See United States v. Jones*, 111 F. App'x 52, 56–57 (2d Cir. 2004) (rejecting juror disqualification, Eighth Amendment, and ineffective assistance of counsel challenges to conviction and sentence); *see also United States v. Lewis*, 386 F.3d 475, 123 (2d Cir. 2004). But the Second Circuit decided to withhold issuing a mandate until the United States Supreme Court had heard and

decided *United States v. Booker* and *United States v. Fanfan*, Nos. 04-104 & 04-105, 543 U.S. 220 (2005), both of which were set to be argued in the fall of 2004. *See Lewis*, 386 F.3d at 123–24.

On January 12, 2005, the Supreme Court decided *Booker* and *Fanfan*, holding, in relevant part, that the "provision of the federal sentencing statute that makes the [United States Sentencing] Guidelines mandatory" was incompatible with the Sixth Amendment and must be severed—thereby rendering the guidelines "effectively advisory." *Booker*, 543 U.S. at 245.

On February 2, 2005, the Second Circuit decided *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), establishing a process for implementing *Booker* by providing that in cases "in which a sentencing judge, prior to *Booker/Fanfan*, has committed a procedural error in imposing a sentence, a remand to afford the judge an opportunity to determine whether the original sentence would have been nontrivially different under the post-*Booker/Fanfan* regime will normally be necessary to determine whether the error is harmless, or, if not properly preserved, is available for review under plain error analysis." *Crosby*, 397 F.3d at 119.

On February 16, 2005, the Government moved for summary affirmance of Mr. Richardson's "sentence to a mandatory minimum term of imprisonment" notwithstanding *Crosby*. *See* Docket Entry, No. 01-1242 (CON) (2d Cir. Feb. 16, 2005).

On March 4, 2005, Mr. Richardson moved, *pro se*, for appointment of counsel and remand under *Crosby*. *See* Docket Entries, No. 01-1215 (L) (2d Cir. Mar. 7, 2005) (the motion was not received and entered on the docket until March 7, 2005) *See id.*

On March 7, 2005, the Second Circuit granted the Government's motion for summary affirmance of Mr. Richardson's sentence. Order, No. 01-1242 (2d Cir. Mar. 7, 2005).

On March 23, 2005, the Second Circuit granted Mr. Richardson's motions, appointing counsel for the "limited purpose of filing a letter brief, which is to be single-spaced and no more than five pages, on the issue of whether the sentence should be remanded under [*Booker*] and [*Crosby*]." Order, Nos. 01-1215 (L) & 01-1242 (2d Cir. Mar. 23, 2005).

On April 27, 2005, Mr. Richardson filed a letter brief, in which his court-appointed counsel argued that a remand should issue because Judge Nevas had not followed the correct procedure under 21 U.S.C. § 851(b), in that he failed to conduct any inquiry into whether Mr. Richardson has affirmed or denied the Government's allegations in its career offender notice filed under 21 U.S.C. § 851. *See* Letter Brief, No. 01-1215 (L) (2d Cir. Apr. 27, 2005). Counsel noted, however, that Mr. Richardson's challenge to the basis for those convictions "entails circumstances that are beyond the scope of the present Record on Appeal and will require further investigation and presentation of facts in the district court." *Id.* at 4 n.3. Counsel explained that conducting such an investigation went beyond the scope of his limited appointment. *Id.*

On August 16, 2005, the Second Circuit denied Mr. Richardson's motion to reconsider its summary affirmance of his sentence because (1) Mr. Richardson had failed to raise his § 851(b) objection at sentencing, and it was therefore reviewable only for plain error under Federal Rule of Criminal Procedure 52(b); and (2) Mr. Richardson could not demonstrate plain error because he has "not adduced any evidence suggesting that he can dispute his prior convictions" and therefore could not show that Judge Nevas's error affected his substantial rights. Order, Nos. 01-1215 (L) & 01-1242 (CON) (2d Cir. Aug. 16, 2005).

On August 7, 2006, Mr. Richardson petitioned, *pro se*, to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, renewing the procedural error arguments made with respect to

the Government's career offender notice. Motion to Vacate, Set Aside or Correct Sentence (2255), dated Jan. 27, 2010, No. 3:10-cv-130 (PCD), ECF No. 1.

On March 21, 2007, the judge assigned to the petition, United States District Judge Ellen Bree Burns, denied Mr. Richardson's petition, finding, *inter alia*, that his 1997 conviction was properly construed as a prior conviction for purposes of 21 U.S.C. § 841(b)(1)(A). *See* Ruling, dated Mar. 21, 2007, No. 3:16-cv-1227 (EBB), ECF No. 18 at 4–7. Judge Burns declined to issue a certificate of appealability, finding that Mr. Richardson had not demonstrated the denial of a constitutional right. *Id.* at 12.

Mr. Richardson appealed, *pro se*, the denial of a certificate of appealability. Notice of Appeal, dated July 27, 2007, No. 3:16-cv-1227 (EBB), ECF No. 21. On February 25, 2009, the Second Circuit denied that appeal. Mandate, dated Feb. 25, 2009, No. 3:16-cv-1227 (EBB), ECF No. 24.

On June 19, 2008, Mr. Richardson moved, *pro se*, for a reduction of his sentence under 18 U.S.C. § 3582(c)(2), arguing that he was sentenced based on a sentencing range that was subsequently lowered by the Sentencing Commission through Amendment 706 to the Sentencing Guidelines. Motion to Reduce Sentence, dated Jun. 19, 2008, ECF No. 2249.

On November 25, 2009, Judge Burns denied Mr. Richardson's motion for a reduction of sentence, finding that he was not eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2) because "[e]ven if Richardson's guideline sentencing range was lowered by virtue of Amendment 706, Richardson would not be eligible for relief under 18 U.S.C. § 3582(c)(2) because the entire term of his sentence represents a statutory mandatory minimum." *United States v. Richardson*, No. 99-cr-264 (EBB), 2009 WL 10711651, at *2 (D. Conn. Nov. 25, 2009).

Mr. Richardson appealed Judge Burns's decision; the Second Circuit denied his appeal on November 30, 2010. *United States v. Jones*, 408 F. App'x 416, 419–20 (2d Cir. 2010).

On December 17, 2010, Mr. Richardson moved, *pro se*, for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(B), arguing that his sentence "was imposed in violation of law because: (1) the sentencing court did not comply with the procedural requirements of § 851; (2) the government did not adequately prove that his prior convictions qualified under § 851; (3) one of his prior convictions did not qualify as a prior conviction for purposes of an enhancement under § 851; and (4) the Second Circuit's decision in *Savage v. United States*, 542 F.3d 959 (2d Cir. 2008) should be applied retroactively to his sentence." Motion to Reduce Sentence, dated Dec. 17, 2010, ECF No. 2341.

On February 10, 2012, Judge Burns denied that motion in light of the Second Circuit's 2010 holding. *United States v. Richardson*, No. 99-cr-264 (EBB), 2012 WL 13128202, at *2 (D. Conn. Feb. 10, 2012) (citing *Jones*, 408 F. App'x at 419–20).

Mr. Richardson appealed Judge Burns's decision; the Second Circuit denied his appeal on October 26, 2012. *See* Mandate, filed Feb. 20, 2013, ECF No. 2397.

On December 21, 2018, Congress passed, and the President signed into law, the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (hereafter, the "First Step Act") which "made retroactive some provisions of the Fair Sentencing Act [of 2010, Pub. L. 111-220; 124 Stat. 2372]." *United States v. Medina*, No. 3:05-cr-58 (SRU), 2019 WL 3769598, at *2 (D. Conn. July 17, 2019).

On February 13, 2019, Mr. Richardson moved, *pro se*, for his immediate release or resentencing under Section 404 of the First Step Act. *See* First Step Act Motion for Immediate Release or Resentencing, dated Feb. 13, 2019, ECF No. 2478.

On March 8, 2019, counsel from the Office of the Federal Defender of the District of Connecticut appeared for Mr. Richardson, consistent with the District's February 11, 2019 Standing Order in First Step Act cases. Attorney Appearance, dated Mar. 8, 2019, ECF No. 2479.

On April 16, 2019, Mr. Richardson filed an amended motion for relief under the First Step Act, with the assistance of counsel. *See* Def.'s Mot.

On April 30, 2019, as required by the District's February 11, 2019 Standing Order in First Step Act cases, the U.S. Probation Office filed a supplemental Pre-Sentencing Report, and took the position that Mr. Richardson was not entitled to relief under the First Step Act. *See* First Step Act of 2018 Addendum to the Presentence Report, dated Apr. 30, 2019 ("First Step PSR Supp."), ECF No. 2497.

On May 21, 2019, Mr. Richardson filed a memorandum in support of his motion. Def.'s Mem.

On June 18, 2019, the United States of America (the "Government") opposed Mr. Richardson's motion. Government's Opposition to Def.'s Mot., filed June 18, 2019 ("Gov't Opp."), ECF No. 2523.

On July 2, 2019, Mr. Richardson filed a reply in further support of his motion. Reply Memorandum in Further Support of First Step Act Motion, dated July 2, 2019 ("Def.'s Reply"), ECF No. 2526.

On July 19, 2019 and September 2, 2019, Mr. Richardson filed supplemental briefing in support of his motion. *See* Notice of Supplemental Authority, dated July 19, 2019, ECF No. 2534; Supplemental Memorandum in Support of Def.'s Mot., dated Sept. 2, 2019 ("Def.'s Supp. Mem."), ECF No. 2566.

On September 6, 2019, the Court held a hearing on the motion and reserved decision. Minute Entry, dated Sept. 6, 2019, ECF No. 2575.

## I.    STANDARD OF REVIEW

Enacted in 2018, "Section 404 of the First Step Act authorizes retroactive application of Sections 2 and 3 of the Fair Sentencing Act to defendants who were sentenced for crack cocaine offenses committed prior to August 3, 2010." *United States v. Jamel Williams* ("*J. Williams*"), No. 03-CR-795, 2019 WL 3842597, at *2 (E.D.N.Y. Aug. 15, 2019). The Fair Sentencing Act in 2010 "'reduced [future] statutory penalties for cocaine base[] offenses' in order to 'alleviate the severe sentencing disparity between crack and powder cocaine.'" *Medina*, 2019 WL 3769598, at *3 (quoting *U.S. v. Sampson,* 360 F. Supp. 3d 168, 169 (W.D.N.Y. Mar. 13, 2019)); *see also* Fair Sentencing Act of 2010, Pub. L. No. 220; 124 Stat. 2372.

"Specifically, section 404 of the First Step Act permits 'a court that imposed a sentence for a covered offense' to 'impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.'" *United States v. Lawrence Williams* ("*L. Williams*"), No. 03-CR-1334, 2019 WL 2865226, at *2 (S.D.N.Y. July 3, 2019) (quoting First Step Act § 404).

 "The First Step Act does not mandate sentence reductions for defendants" who are eligible for relief. *United States v. Glore*, 371 F. Supp. 3d 524, 527 (E.D. Wis. Mar. 6, 2019). Instead, "it leaves to the court's discretion whether to reduce their sentences." *Id.*; *see also United States v. Rose*, 379 F. Supp. 3d 223, 233 (S.D.N.Y. May 24, 2019) ("Congress clearly intended relief under § 404 of the First Step Act to be discretionary, as the Act specifically provides that '[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section.'") (quoting First Step Act, § 404(c)).

## II.    DISCUSSION

The threshold issue is Mr. Richardson's eligibility for relief, which requires the Court to determine first whether he was convicted of a "covered offense" under Section 404 of the First Step Act. If Mr. Richardson is eligible for relief, the Court then must determine whether its discretion should be exercised to reduce his current sentence and, if so, by how much.

### A.   Covered Offense

Section 404(a) of the First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." First Step Act § 404(a).

This language does not, on its face, restrict eligibility to defendants who were only convicted of a singular violation of a federal criminal statute whose penalties were modified by section 2 or section 3 of the Fair Sentencing Act. So long as a defendant was convicted of "a violation"—i.e., at least one violation—for which the penalties were modified by section 2 or 3 of the Fair Sentencing Act, he or she is eligible for relief.

As a multitude of district courts across the country have now recognized, "[i]t is the statute of conviction, rather than a defendant's actual conduct, that determines a defendant's eligibility under the First Step Act." *L. Williams*, 2019 WL 2865226, at *2 (S.D.N.Y. July 3, 2019) (citing *Rose*, 379 F. Supp. 3d at 228–31); *United States v. White*, No. 99-CR-628-04, 2019 WL 3228335, at *2 n.1 (S.D. Tex. July 17, 2019) (collecting forty-one district court cases reaching this conclusion); *see also United States v. Boulding*, 379 F. Supp. 3d 646, 651 (W.D. Mich. 2019) ("[E]ligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense

affected by the Fair Sentencing Act. If so, the defendant is categorically eligible for consideration . . . ."); *but see White*, 2019 WL 3228335, at *5 ("Only a few courts have sided with the government's position that eligibility turns on the defendant's actual conduct, rather than the charged offense . . . .") (collecting cases). Eligibility for relief under the First Step Act thus turns not on whether a conviction, even if it incorporates several violations of criminal statutes, may be construed as a whole is a "covered offense," but whether there is a conviction of a violation of a criminal statute for which the statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act.

"The Fair Sentencing Act modified the penalties for a crime involving 50 grams or more of crack cocaine and, therefore, that crime is a 'covered offense' for purposes of the First Step Act." *Medina*, 2019 WL 3769598, at *2 (quoting First Step Act § 404(a)). But "[t]he Fair Sentencing Act did not modify the penalties for a crime involving five kilograms of powder cocaine, however, and powder cocaine offenses are therefore not 'covered offenses' for purposes of the First Step Act." *Id.* Similarly, the Fair Sentencing Act did not modify the penalties for crimes involving heroin.

The Government and the United States Probation Office argue that Mr. Richardson is ineligible for relief under the First Step Act because his drug conspiracy conviction involved not only crack cocaine, but also "quantities of both heroin and powder cocaine that independently trigger the statutory penalty scheme of § 841(b)(1)(A)," i.e. penalties that "remain unchanged by Sections 2 and 3 of the Fair Sentencing Act.[1] Gov't Opp. at 1; 9–11; First Step PSR Supp. at 3

---

[1] The Government also argues, in a footnote, that the "enormous quantities" of crack cocaine found by Judge Dorsey at sentencing "would still render [Mr. Richardson] ineligible" for relief under Section 404. Gov't Opp. at 11 n.3. As this Court has previously noted, and the Government acknowledges, *see id.*, that position has been rejected by the majority of district courts to have considered the issue. *See, e.g., United States v. Boulding*, 379 F. Supp. 3d 646, 651–52 (W.D. Mich. 2019) ("[E]ligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act. If so, the defendant is categorically eligible for consideration regardless of actual quantities. The

("[I]t is the probation officer's position that the statutory penalties facing Mr. Richardson on Count 1 were not modified by sections 2 or 3 of the Fair Sentencing Act of 2010 and thus Court [sic] 1 is not a "covered offense" for which the Act provides the Court authority to consider imposing a reduced sentence.").

The Court disagrees.

Mr. Richardson was convicted and sentenced, before the Fair Sentencing Act's enactment, for an offense involving 50 grams or more of crack cocaine, the statutory penalties for which were modified by Section 2 of the Fair Sentencing Act. His conviction thus was premised, at least in part, on his violation of 21 U.S.C. § 841(b)(1)(A). Mr. Richardson therefore was convicted of a "covered offense" and is eligible for relief under the First Step Act. *See Medina*, 2019 WL 3769598, at *4.

In support of its argument that the heroin and powder cocaine involved in Mr. Richardson's conviction make him ineligible for relief, the Government points to several district courts that have concluded that defendants convicted for drug charges involving both crack cocaine and drugs other than crack cocaine were ineligible for relief under the First Step Act, Gov't Opp. at 9–10 (collecting cases). Concluding otherwise, the Government argues, "would expand the First Step Act beyond all recognition, essentially entitling every drug defendant to a sentencing reduction even if they were never charged with crack cocaine." Gov't Opp. at 10.

Of course, eligibility for relief under the First Step Act should not be confused with an entitlement to a sentence reduction. Indeed, eligibility for relief under the First Step Act does not

---

particular quantities affect only the Court's discretionary call on whether to grant a reduction in sentence . . . . For purposes of eligibility alone, quantity determinations are unnecessary. The statute rests eligibility on the nature of a defendant's prior conviction: specifically, whether it was a 'covered offense.'"). The Government argues, however, that the Court need not address this issue in this case because Mr. Richardson was convicted of a multiple-drug offense. *See* Gov't Opp. at 11 n.3.

result in automatic relief. As another district court in this Circuit has noted: "Congress clearly intended relief under § 404 of the First Step Act to be discretionary, as the Act specifically provides that '[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section.'" *Rose*, 379 F. Supp. 3d at 233 (quoting First Step Act, § 404(c)); *see also United States v. Mack*, No. 00-323-02 (KSH), 2019 WL 3297495, at *12 (D.N.J. July 23, 2019) ("Finding these defendants eligible does not write off their responsibility for dealing in powder cocaine as well as dealing in crack cocaine. That constitutes a fact that bears on what relief these defendants are entitled to. What the Court finds now is that the jury's verdict does not disqualify the Mack defendants from consideration under § 404."); *United States v. Lewis*, No. CR 08-0057 (JB), 2019 WL 2192508, at *22, *30 (D.N.M. May 21, 2019) (finding defendant eligible for relief under the First Step Act but declining to reduce his sentence in light of a "disturbing" criminal history "filled with violence and bad behavior").

Accordingly, having been convicted of a "covered offense," Mr. Richardson is eligible for relief under the First Step Act.

### B. Scope of Relief

Having concluded that Mr. Richardson is eligible for relief under the First Step Act, the Court now must determine whether a sentence reduction for his drug offense is appropriate and, if so, what reduction is appropriate.

While the Court need not reach the issue of whether the First Step Act authorizes a "plenary re-sentencing," as some courts have held, *see, e.g.*, *Medina*, 2019 WL 3769598, at *6, unlike previous rounds of sentencing reform, "the First Step Act does not impose any artificial or guideline limits on a reviewing court." *Boulding*, 379 F. Supp. 3d at 653. As the court in *Boulding* explained:

The First Step Act is different. The Sentencing Commission has nothing to do with it. Rather, Congress has directly authorized the possible reduction under 18 U.S.C. § 3582(c)(1)(B). Under that section a 'court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure.' Because the First Step Act expressly permits courts to modify a term of imprisonment, the First Step Act serves as the basis for relief under Section 3582(c)(1)(B). The limits of 18 U.S.C. § 3582(c)(2) are inapplicable. The only limits found in the First Step Act are the statutory minimums of the Fair Sentencing Act's new thresholds. The sentencing guidelines inform the Court's discretion to be sure. But they do not limit the Court's discretion as they did in earlier rounds under 18 U.S.C. § 3582(c)(2).

*Boulding*, 379 F. Supp. 3d at 653 (citations omitted).

The Government argues that the "authority of a district court to modify a prison sentence is narrowly limited by 18 U.S.C. § 3582, and a 'court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute.'" Gov't Opp. at 12 (quoting 18 U.S.C. § 3582(c)(1)(B). All the First Step Act permits, the Government insists, is "a limited exception, providing that the court may '*impose a reduced sentence* as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.'" *Id.* (emphasis in original) (citing First Step Act § 404(b)).

The Court disagrees.

As already discussed, Mr. Richardson's drug sentence was determined from a single count of conviction that involved three types of drugs: powder cocaine, heroin, and crack cocaine. At Mr. Richardson's 2001 sentencing, Judge Nevas found that Mr. Richardson's total offense level was 43 and his criminal history category was III, but that because of the career offender notice filed by the Government, his criminal history category was increased to VI. Sentencing Tr. 22:15–21. At that level and criminal history category, Judge Nevas found that the

then-mandatory guidelines calculation required life imprisonment. *Id.* After hearing a statement from Mr. Richardson, Sentencing Tr. 32:25–37:21, Judge Nevas found that he was required to sentence Mr. Richardson to a term of life imprisonment:

> Mr. Richardson, as you have heard and as you know, of course, I have no discretion in this matter.
>
> I am required to sentence you to life, and as I've—I said a few minutes ago, I don't—this is not, something that's pleasant.
>
> I've said many times that the most difficult thing that a judge has to do is to sentence people because it's a huge power, it's an enormous power that one human being has over another human being, because whatever I say or do affects your life, and the words that come out of my mouth, when I say, "I sentence you to life," you have to go to jail for the rest of your life because of what I've said. So that's a huge
> power for any person to have over another person, and I don't take that responsibility lightly.
>
> It's an awesome responsibility, and I think it's even harder I know it's harder when I see somebody like you who's young, obviously intelligent., articulate, who could have—if you had stayed away from these people, finished high school, you could've been anything you wanted to be.
>
> You're smart, you're articulate, but you got involved with people who convinced you that there was easy money in dealing drugs, that you didn't have to get up at 7:00 o'clock in the morning and go to work 'til 5 or 6:00 o'clock everyday and bring a paycheck home on Friday.
>
> That wasn't the life that you chose. You chose a different life and now you stand where you stand, facing what you're facing, because of the choices that you made.
>
> Now, I listened to what you said. I heard the statement that you made. I've no idea whether what you're claiming is true or not true . . . . The fact is you did deal drugs, you did go to New York with Aaron Harris, at least on the one occasion that we heard about at trial, and certainly on other occasions, to buy drugs. There were guns involved. You made deliveries to P.T. Barnum.

> Those are facts. You can't run away from those facts, despite what you said in your statement, because what you said in your statement was trying to blame other people for the predicament that you now find yourself in, and I understand that that may be a natural inclination on your part, that that's an easy thing to do, is to say it's the other guy's fault.. It's Mr. Hernandez;s fault. It's Mr. Tyrell's fault.. It.'s Ms. Marquez' fau1t. It's Mr. Harmon's fault. It's everybody else's fault that you're standing here looking at life, but not your fault, and you know, 'cause you're smart enough to know, that. that doesn't wash.
>
> You know why you're standing here, because you did what you did, and now you have to pay the consequences for it.
>
> Sentence of the Court is that the defendant be committed to the custody of the Bureau of Prisons for life.

Sentencing Tr. 38:9–40:12.

The sentencing transcript thus indicates that Mr. Richardson was sentenced under one sentencing package, and that Judge Nevas did not determine that sentence based on each individual drug, but instead imposed the sentence that he was required to with respect to all the drugs involved in the offense conduct.

Moreover, Judge Nevas adopted the factual findings of the updated Presentence Report, which explicitly determined Mr. Richardson's base offense level of 38 based on his "conspiring to distribute and distribution of 1.5 kilograms or more of cocaine base." *See* Presentence Report, filed Mar. 14, 2001, annexed as Ex. 2 to First Step PSR Supp., ECF No. 2497-2, ¶ 55 ("The guideline for 21 U.S.C. § 846 is U.S.S.G. § 2D1.1(c)(1) which establishes a base offense level of 38 for offenses involving the possession and distribution of more than 1.5 kilograms of cocaine base.").

The Court therefore finds that the powder cocaine and heroin violations were addressed with the crack cocaine as part of a single sentencing package, and that these three offenses are inextricably related. The Court thus has the authority to reduce Mr. Richardson's entire drug

sentence under the First Step Act. *See United States v. Triestman*, 178 F.3d 624, 630 ("We therefore hold that the district court had the authority under § 2243 to dispose of the matter as law and justice require, and that this authority included the power to resentence Triestman to the overall term that he would have received on his interdependent sentencing package absent his unlawful § 924(c) conviction."); *see also id.* at 631–32 (collecting cases).

But this still leaves the question of whether—and how—the Court should exercise this discretion. The operative issue at this stage is whether there is a basis consistent with the First Step Act for reducing Mr. Richardson's life sentence.

Mr. Richardson argues that his sentence should be reduced and provides several different calculations for how this reduction could be made, as well as arguing for a plenary resentencing. *See* Def.'s Supp. Mem. at 3–10. Under one approach, Mr. Richardson argues that the Court should revisit the validity of the § 851 notice and reduce his criminal history category to III. *Id.* at 3–5. Under another approach, he argues that the Court should reconsider a variety of the enhancements Judge Nevas applied at sentencing. *Id.* at 7–8.

The Government argues that Judge Nevas used the figure of 40.5 kilograms of cocaine base, in addition to the 140 kilograms of heroin, when determining Mr. Richardson's sentence. Gov't Opp. at 7–8, 11. As a result, the Government argues that even if Mr. Richardson is eligible for relief under the First Step Act, he "would have faced the same statutory penalty provisions of 21 U.S.C. § 841 (a)(1)(A) (footnote collecting cases omitted), if the Fair Sentencing Act had been in force at the time he committed his violation." *Id.* at 12.

Mr. Richardson disputes this, arguing that Judge Nevas "did not make any findings holding Mr. Richardson responsible for a larger quantity beyond 1.5 kilograms." Def.'s Supp. Mem. at 6.

The Court agrees.

Under today's Sentencing Guidelines, Mr. Richardson's base offense level for a crime involving 1.5 kilograms of crack cocaine—located on the Drug Sentencing Table as 1.5 kilograms of powder cocaine, to account for the elimination of the crack-powder cocaine disparity[2]—is 24. *See* U.S.S.G. § 2D1.1(c)(4).

With the additional 11-level adjustment found by Judge Nevas, Mr. Richardson's adjusted offense level then would be 35. With the career offender enhancement, Mr. Richardson's offense level would increase to 37, and his criminal history category would increase to VI. The Sentencing Guideline Range would then be 360 months to life imprisonment.

But there is a serious question as to whether the career offender enhancement should continue to apply. As Mr. Richardson argues, "[t]o treat him as a career offender today would violate current law and would also significantly overstate his criminal history, which is in fact extremely limited." Def.'s Supp. Mem. at 5 (footnote collecting cases omitted). In his view, "the Connecticut drug statutes that triggered that status are now widely recognized as categorically overbroad and therefore they do not qualify as 'controlled substance offenses' for purposes of the career offender Guidelines." *Id.*

Without the career offender enhancement, Mr. Richardson would be in Criminal History Category III and his adjusted offense level would only be 35, resulting in a Sentencing Guideline Range of 210 to 262 months imprisonment. Other than to argue that the Court should not allow "[Mr.] Richardson to relitigate the enhancement imposed under 21 U.S.C. § 841 (a)(1)(A) and 851," Gov't Opp. at 14, the Government does not disagree with Mr. Richardson's legal analysis of whether current law would permit the § 851 career offender enhancement today.

---

[2] *See* Def.'s Supp. Mem. at 8–9 (collecting recent cases in this District applying a 1:1 ratio for crack cocaine and powder cocaine, consistent with the remedial purposes of the First Step Act).

In any event, while the Court need not re-calculate Mr. Richardson's Sentencing Guidelines to address this career offender enhancement issue in deciding whether to reduce Mr. Richardson's sentence, before determining whether Mr. Richardson's sentence should be reduced, and if so, by how much, the Court will consider all of the relevant factors under 18 U.S.C. § 3553(a) and thus will issue "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (paragraph 2) of this subsection." *See Rose*, 379 F.Supp.2d at 234 ("[E]ven if consideration of § 3553(a) factors is not expressly required by the First Step Act, the Court concludes that it is appropriate to use that familiar framework to guide the exercise of discretion conferred by the First Step Act."); *see also United States v. Romano*, 794 F.3d 317, 339 (2d Cir. 2015) (recognizing the relevance of the § 3553(a) factors in considering the length of a sentence).

Under paragraph (2) of this subsection, the sentence must "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

In addition, the statute requires consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant," "the kinds of sentences available," the relevant "sentencing range established" for the offense, and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (3),(4), and (6).

In weighing these various factors, as the Court has, it is important to reiterate yet again that the Government's successful prosecution of this far-ranging and devastating criminal enterprise at the P.T. Barnum Housing Project and the lengthy prison sentences that followed have made Bridgeport and its residents safer. There is nothing in this record to suggest otherwise.

Put another way, a reconsideration of the length of Mr. Richardson's sentence cannot and should not be construed as either a reconsideration of his underlying conviction or a reconsideration of the propriety of a lengthy sentence for this conviction. The issue is not whether Mr. Richardson should have served a lengthy prison sentence for his crimes. Having determined that Mr. Richardson is eligible for consideration of relief under the First Step Act, the issue instead is whether the length of that sentence should now be reduced, taking into consideration his various criminal acts and all of the other factors relevant under 18 U.S.C. § 3553(a).

Having weighed all of these factors, a reduction of Mr. Richardson's sentence of life imprisonment to time served is both consistent with the current Sentencing Guidelines and the broad remedial purpose of the First Step Act.

First, while the Sentencing Guidelines, both the past ones and the present ones, are no longer mandatory, if Mr. Richardson had been sentenced today for his crimes, his likely Sentencing Guidelines range would be 210 to 262 months imprisonment rather than 360 months to life.

Second, having been in custody since May 4, 2000, Mr. Richardson already has served a sentence of 233 months. If the Court reduced his sentence to a term of years, consistent with the current Sentencing Guidelines, Mr. Richardson would be eligible to receive good-time credits.

With good-time credits, Mr. Richardson has served a sentence in excess of the top of the Sentencing Guidelines range likely applicable to him now.

Third, Mr. Richardson has used his time in prison to improve and chart a new path forward, efforts that have been ongoing since early in his time of incarceration. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) ("[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing.").

After arriving at the Allenwood facility in May of 2001, Mr. Richardson became involved with the CODE program, "a year long residential treatment program focused on helping inmates develop prosocial values and positive ways of managing their lives." Def's Mem., Exhibit C: Psychology Progress Summary. "Over the course of his involvement in the program, [Mr.] Richardson worked on impulse control, managing depression, coping with his Life sentence at his young age and maintaining a positive relationship with his three children." *Id.* Mr. Richardson "successfully completed the CODE program in November of 2002." *Id.*

After completion of the CODE program in 2002, Mr. Richardson became "an active participant in the CODE Aftercare program for approximately nine years." Def.'s Mem., Exhibit H: Challenge Treatment Summary. "During the Aftercare program he began to involve himself with UNICOR Prison Industries." *Id.* He completed "almost 30 programs" and "continued to develop and grow." *Id.*

Since December of 2016, Mr. Richardson has been incarcerated at USP Atwater. After arriving there, he "expressed interest in participating in the Challenge Program." Def.'s Mem., Exhibit A: Memorandum by Drug Abuse Coordinator and Former Challenge Coordinator. "The Challenge Program is a 500 hour therapeutic residential treatment program which focuses on

individuals who have a reported history of substance abuse and/or mental health concerns." *Id.*

Mr. Richardson graduated from that program in August 2018. *Id.* As recounted by the Challenge

Coordinator:

> Mr. Richardson was someone whose behavior and character were evidence of change long prior to his official graduation from the program. He showed dedication and ambition having endured obstacles which would have disheartened others (e.g., extensive lockdowns, etc.) and would have led to criminal type behaviors. Instead, Mr. Richardson offered up himself to the community as an example of a man who struggles but utilizes prosocial methods to address his needs (e.g. talking to staff and inmates about his concerns, dreams and ambitions).

*Id.* During his participation, Mr. Richardson's efforts resulted in him being named "Challenger

of the Week," a title that is awarded to "someone who has shown dedication to change and has

had a lasting impact on the community." *Id.* He also was asked to "co-facilitate the Anger

Management class in general population." *Id.* "His relatable stories and experiences allowed

others in the group to build bridges of trust and share some of their own experiences." *Id.* As a

result, this former Challenge Coordinator described Mr. Richardson as someone who "will be a

success upon his release not because the road will be easy but because he possesses the necessary

skills (along with determination) to make it so." *Id.*[3]

All of these factors, as well as the other factors considered under 18 U.S.C. § 3553(a),

which include the seriousness of the criminal conduct undertaken by Mr. Richardson (and the

serious offenses of which he has been convicted and which were properly considered at the time

of his current sentence), warrant a sentence reduction to time served. Because of Mr. Richarson's

---

[3] While Mr. Richardson's willingness to participate in and successful completion of these various rehabilitative efforts in prison are significant, these rehabilitative efforts, of course, would not be possible but for the Federal Bureau of Prisons (the "Bureau of Prisons"). The Bureau of Prisons has provided programming essential to allowing those incarcerated to address the underlying behavior responsible for their incarceration, regardless of the length of a person's sentence. *See* Bureau of Prisons Policy 5300.21: Education, Training and Leisure Time Program Standards (Feb. 18, 2002); *see also* Bureau of Prisons Policy 5353.01: Occupational Programs (Dec. 17, 2003).

life sentence, Judge Nevas did not impose a term of supervised release. But 21 U.S.C. § 841(b)(1)(A) still mandates a minimum term of supervised release of five years for a crime involving one (1) kilogram or more of heroin. The reduction of his term of imprisonment from a life sentence to time served thus should be accompanied by the corresponding imposition of a term of supervised released.

Consistent with the discretion given to the Court under Section 404, and the Court's obligation under 18 U.S.C. § 3553(a) to ensure that any reduced sentence reflects the seriousness of the offense, protects the public, and provides the defendant with needed educational or vocational training in the most effective manner, a term of supervised release should be imposed on Mr. Richardson's sentence.

Accordingly, a term of supervised release of five (5) years shall be imposed, with all the standard and mandatory conditions required under 18 U.S.C. § 3583(d) and USSG § 5D1.3. If Mr. Richardson were to violate any term of his conditions of supervised release, he will be subject to up to two (2) additional years of incarceration for each violation.

## IV.    CONCLUSION

For the reasons explained above, the Court (1) **GRANTS** the motion; (2) **ORDERS** that Mr. Richardson's sentence of incarceration be **REDUCED** to **TIME SERVED** on all counts; (3) **IMPOSES** a term of supervised release of **(FIVE) 5 YEARS**. The Bureau of Prisons is authorized to delay execution of this Order for up to ten (10) days after its issuance so that the Bureau may make necessary arrangements related to Mr. Richardson's release. The Bureau of Prisons is directed to proceed as expeditiously as possible so as to avoid any unnecessary delay.

The Clerk of Court is respectfully directed to file an amended judgment and terminate this case.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of October, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE